Merrimack
No. 81-402

CONSOLIDATED UTILITY EQUIPMENT SERVICES, INC.

v.

EMHART MANUFACTURING CORPORATION

April 29, 1983

*Wadleigh, Starr, Peters, Dunn & Kohls*, of Manchester (*John A. Lassey* on the brief and orally), for the plaintiff.

*Ransmeier & Spellman*, of Concord (*John C. Ransmeier* on the brief, and *Lawrence E. Spellman* orally), for the defendant.

*Nighswander, Martin, KillKelley & Kidder P.A.*, of Laconia (*David J. KillKelley* on the brief and orally), for Mary M. Brown, administratrix of the estate of Ronald R. Brown.

*Aeschliman & Tober*, of Portsmouth (*Nicholas R. Aeschliman* on the brief and orally), for the New Hampshire Trial Lawyers Association, as amicus curiae.

*A. J. McDonough P.A.*, of Manchester, *& a.* (*Kenneth G. Bouchard* on the brief and orally), for certain members of the defense bar of the State of New Hampshire, as amicus curiae.

*Brown and Nixon P.A.*, of Manchester (*Leslie C. Nixon* and *Mark H. Campbell* on the brief), by brief for Elmer H. York, administrator of the estate of James E. York, *& a.*, as amici curiae.

*Kearns, Colliander, Donahue & Tucker P.A.*, of Exeter (*David S. Brown* on the brief), by brief for Collectramatic, Inc., as amicus curiae.

*Orr and Reno P.A.*, of Concord (*William L. Chapman* on the brief), by brief for Correct Manufacturing Corporation, as amicus curiae.

*Sulloway, Hollis & Soden*, of Concord (*John W. Mitchell* on the brief), by brief for the American Insurance Association and the Alliance of American Insurers, as amici curiae.

BROCK, J. The plaintiff, Consolidated Utility Equipment Services, Inc. (CUES), appeals from the Trial Court's (*DiClerico*, J.) dis-

missal of its indemnity action against the defendant, Emhart Manufacturing Corporation. We affirm.

In October 1976, Ronald Brown, an employee of Trees, Inc., was killed when a hydraulic bucket-lift device (known as a "sky-worker"), in which he was riding, collapsed. Approximately five months earlier, Trees, Inc., had hired CUES to undertake certain repairs to the "sky-worker" and to inspect it generally.

Following Brown's death, his administratrix brought suit in Vermont against Emhart, the manufacturer of the bucket-lift equipment, alleging that Emhart was responsible for the decedent's death. The administratrix also brought suit in New Hampshire against CUES, claiming that CUES negligently failed to discover a crack in the equipment which allegedly caused the collapse of the unit. The Vermont litigation was settled, but the New Hampshire action is still pending.

CUES subsequently sued Emhart for indemnification, claiming that Emhart should bear all liability for Brown's death, due to the fact that Emhart's role in creating the alleged defect in the equipment was "active," while CUES' alleged negligence, in failing to discover the defect, was only "passive." The trial court dismissed the indemnity action, and CUES appealed.

This court has long adhered to the traditional common-law rule prohibiting contribution, a partial shifting of liability, among joint tortfeasors. *See Scahill v. Miniter*, 101 N.H. 56, 57, 132 A.2d 140, 142 (1957); *Company v. Railroad*, 62 N.H. 159, 160 (1882). However, we have not previously had the opportunity to consider the no-contribution rule in the context of our comparative negligence statute, RSA 507:7-a (Supp. 1979), which was enacted in 1969.

■ Arguments presented by counsel for the parties, and for others interested in the issues involved in this case, persuade us that the judicial adoption of a contribution-among-joint-tortfeasors rule in New Hampshire at this time would bring with it a multitude of ramifications, the effect of many of which cannot reasonably be anticipated in the context of a single case. *See generally* Comment, *Reconciling Comparative Negligence, Contribution, and Joint and Several Liability*, 34 WASH. & LEE L. REV. 1159 (1977). One procedural device for resolving contribution claims would be to allow impleader of joint tortfeasors, a matter which could be left to the sound discretion of the trial court. *See, e.g., American Motorcycle Ass'n v. Superior Court*, 20 Cal. 3d 578, 606, 578 P.2d 899, 917, 146 Cal. Rptr. 182, 200 (1978); FED. R. CIV. P. 14(a), 42(b). Another option would be to require joint tortfeasors to resolve contribution

claims and disputes after the plaintiff has collected a final settlement or judgment. We are convinced that the task of considering and weighing the ramifications of such options is, in the first instance, a matter more appropriate for legislative action, particularly where it was the legislature itself that adopted the comparative-negligence concept.

Notwithstanding our continued adherence to the no-contribution rule, one joint tortfeasor can obtain indemnification, a complete shifting of liability, against another where the indemnitee's liability is derivative or imputed by law, *see William H. Field Co. v. Nuroco Woodwork, Inc.*, 115 N.H. 632, 634, 348 A.2d 716, 718 (1975) (citing *Morrissette v. Sears, Roebuck & Co.*, 114 N.H. 384, 387, 322 A.2d 7, 9 (1974)), or where an express or implied duty to indemnify exists. *See Sears, Roebuck & Co. v. Philip*, 112 N.H. 282, 286, 294 A.2d 211, 213 (1972); *Wentworth Hotel v. Gray, Inc.*, 110 N.H. 458, 460–61, 272 A.2d 583, 585 (1970).

A number of jurisdictions have allowed indemnification in the past where the indemnitee's negligence was passive (*i.e.*, failure to discover a defect) and the indemnitor's negligence was active. However, in light of contemporary comparative negligence statutes, such indemnification has been disallowed. *See, e.g., Hendrickson v. Minnesota Power & Light Co.*, 258 Minn. 368, 373, 104 N.W.2d 843, 848 (1960) (overruled by *Tolbert v. Gerber Industries, Inc.*, 255 N.W.2d 362, 367–68 (Minn. 1977)); *Jackson v. Associated Dry Goods Corp.*, 13 N.Y.2d 112, 116–17, 192 N.E.2d 167, 169–70, 242 N.Y.S.2d 210, 213–14 (1963) (overruled by *Dole v. Dow Chem. Co.*, 30 N.Y.2d 143, 153, 282 N.E.2d 288, 295, 331 N.Y.S.2d 382, 391–92 (1972)). Language in *Morrissette v. Sears, Roebuck & Co.*, 114 N.H. at 387, 322 A.2d at 9, appeared to signal this court's adoption of the active-passive negligence doctrine. As the law has been clarified by *Nuroco Woodwork, Inc.*, 115 N.H. at 634, 348 A.2d at 718, and later cases, however, we have not deviated, and do not now deviate, from the position that indemnity is permitted only when one becomes liable to a third party because of the imputed negligence of another, *Baker v. Lord*, 119 N.H. 868, 870, 409 A.2d 789, 789–90 (1979), or when an express or implied duty to indemnify exists.

Accordingly, because CUES' indemnity action against Emhart was based upon the active-passive negligence doctrine, we hold that the trial judge properly dismissed the case.

*Affirmed.*

BOIS, J., dissented in part; the others concurred.

BOIS, J., dissenting in part: While I question the majority's inference that we have never approved the active-passive negligence doctrine as a basis for indemnity, *see Morrissette v. Sears, Roebuck & Co.*, 114 N.H. 384, 387, 322 A.2d 7, 9 (1974); *Wentworth Hotel v. Gray, Inc.*, 110 N.H. 458, 461, 272 A.2d 583, 585 (1970), I agree that the doctrine should have no effect under our law in the future. In conjunction with this ruling, however, I would permit contribution on a comparative basis among non-settling joint tortfeasors.

The current rule prohibiting contribution among joint tortfeasors is grossly inequitable because it permits a joint tortfeasor to avoid liability if he is not sued, while it forces the tortfeasor who is sued to bear the entire burden of a loss, even if he was only marginally at fault. Numerous jurisdictions have recognized this inequity and have adopted contribution either by court decision or by statute. *See* W. PROSSER, HANDBOOK OF THE LAW OF TORTS § 50, at 306–07 (4th ed. 1971).

I cannot agree with the majority that the adoption of contribution among joint tortfeasors should be left to the legislature. The current no-contribution rule was adopted through the judicial process and may be modified or abolished by that process. *See, e.g., Best v. Yerkes*, 247 Iowa 800, 810, 77 N.W.2d 23, 29 (1956); *Hobbs v. Hurley*, 117 Me. 449, 451–53, 104 A. 815, 816–17 (1918); *Ellis v. Chicago & N.W. R. Co.*, 167 Wis. 392, 409–10, 167 N.W. 1048, 1053–54 (1918). Furthermore, the enactment of the comparative negligence statute, RSA 507:7-a (Supp. 1979), has signaled a legislative preference for proportionate allocation of fault, and comparative contribution would foster the legislative policy.

The limitation of contribution to non-settling parties would insure that a settling party who in good faith obtained a covenant not to sue would be relieved of any further involvement or liability after the execution of the settlement agreement. *See* UNIFORM CONTRIBUTION AMONG TORTFEASORS ACT, 9 U.L.A. § 4(b) and accompanying commissioner's comment, at 98–100 (1955 rev. act). If several non-settling parties remained, then their liability could be determined on a relative or comparative basis after opportunity for impleader. It must be noted, however, that the current versions of RSA 507:7-b (Supp. 1979) and RSA 507:7-c (Supp. 1979) would pose a practical barrier to the proportionate allocation of fault when, as a result of prior settlements, only one party remained in the litigation.

In cases not involving settlement agreements, a defendant could easily be permitted to implead other tortfeasors, subject to the trial

judge's discretion to sever the underlying action from the contribution suits. This process would protect the underlying plaintiff's interests, guarantee the proportionate allocation of fault, and promote judicial economy.

Because Emhart has settled in the underlying suit, I would agree that it should not be liable to CUES in indemnity or contribution. Nevertheless, I would permit CUES to seek contribution against any non-settling parties.