726 F.2d 649
 Ralph GOMEZ, Plaintiff,
v.
AMERICAN ELECTRIC POWER SERVICE CORPORATION, a corporation;
Indiana and Michigan Electric Company, a
corporation; Franklin Real Estate
Company, a corporation,
Defendants-Appellants.
and
McCulloch Oil Corporation, a corporation, Defendant-Appellee.
 No. 81-2409.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 30, 1984.
Rehearing Denied Feb. 23, 1984.
 
 Tim D. Dunn of Hanson, Russon, Hanson & Dunn, Salt Lake City, Utah, Attorneys for defendant-appellee.
 Jay E. Jensen and Denton M. Hatch of Christensen, Jensen & Powell, Salt Lake City, Utah, for defendants-appellants.
 Before BARRETT, DOYLE and McKAY, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R.App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.
 
 
 2
 This is an appeal by Defendants American Electric Power Service Corporation, Indiana and Michigan Electric Company, and Franklin Real Estate Company (collectively referred to as AEP)[1] of an order of partial summary judgment on a crossclaim for indemnification granted against them and in favor of Defendant McCulloch Oil Corporation (McCulloch). This cause was initiated by Ralph Gomez, a coal miner, for injuries he sustained on October 3, 1978, when the wall of a coal mine in which he worked collapsed on top of him. Gomez sued all defendants (AEP and McCulloch) on a theory of negligence.
 
 
 3
 Braztah Corporation, a wholly-owned subsidiary of McCulloch, was the operator of the mine and, therefore, Gomez's employer. Braztah was immune from suit by Gomez pursuant to the Utah Worker's Compensation Act. After Gomez filed his complaint, AEP brought a crossclaim against McCulloch, alleging that if it were found liable to Gomez, AEP was entitled to indemnity and contribution from McCulloch.[2] We are concerned only with the indemnity issues on this appeal. Jurisdiction is based upon diversity of citizenship, 28 U.S.C. Sec. 1332.
 
 FACTS
 
 4
 In 1971, McCulloch purchased some coal mines in Carbon County, Utah. Braztah became the operator of these mines, known as the Braztah Mines. In 1974, McCulloch, Braztah and AEP entered into a contract in which AEP was to pay Braztah for conducting the mining operation and AEP would also purchase the mined coal. However, the 1974 Contract was superseded in 1975 by a new contract which transferred ownership of the mines to AEP.[3] The 1975 Contract provided that Braztah, as operator of the mine, agreed to mine, produce and deliver a specified quality and quantity of coal to AEP, the owner of the mine. AEP agreed to accept and pay for any coal delivered under the Contract.
 
 
 5
 The Contract provided further that Braztah was solely responsible for the control and direction of the mines' employees. Braztah also agreed to use its best efforts to comply with all applicable governmental laws and regulations regarding mine operations, including those concerning mine safety. Article XXX of the 1975 Contract, provided in pertinent part:
 
 
 6
 Operator hereby agrees to indemnify, protect and save harmless I & M [AEP] from and against any and all losses, damages, injuries, claims, demands of whatsoever kind and nature asserted by third parties against I & M [AEP] and all expenses, legal or otherwise arising out of or in any way resulting from Operator's operations under or in performance of this Contract....
 
 
 7
 R., Supp. Vol. XVI at 71.
 
 
 8
 In Article XXIII(a) of the 1975 Contract, McCulloch covenanted to "cause Operator to perform its agreements and obligations under this Contract." R., Supp. Vol. XVI at 66.
 
 
 9
 On November 30, 1979, subsequent to Gomez' accident but prior to the time he filed suit, a "Settlement Agreement" was entered into between McCulloch, Braztah and AEP. This Agreement expressly superseded the 1975 Contract and transferred the entire operations of the Braztah Mines to AEP. In the Agreement, the parties also sought to clarify the obligations remaining between them. The parties dispute the extent that the Agreement released McCulloch and Braztah from their obligations under the 1975 Contract. Since the 1979 Agreement was entered into, Braztah has been dissolved.
 
 
 10
 On appeal, we must determine whether the district court erred by granting summary judgment in McCulloch's favor on the grounds that as a matter of law, AEP is not entitled to indemnity under the 1975 Contract nor under a common law theory.
 
 STANDARD OF REVIEW
 
 11
 At the outset, it is necessary to describe the standard of review we are to follow. Because the sole issue before us is the propriety of the district court's grant of summary judgment, we must view the case in the same manner as did that court. See Western Casualty & Surety Co. v. National Union Fire Ins. Co., 677 F.2d 789, 791 n. 1 (10th Cir.1982); Luckett v. Bethlehem Steel Corp., 618 F.2d 1373, 1377 (10th Cir.1980). Thus, we must determine whether any genuine issue of material fact exists and, if not, whether the substantive law was correctly applied. See Fed.R.Civ.P. 56(c); Western Casualty, supra. In doing so, we must view the record on summary judgment in the light most favorable to the party opposing the motion. 10 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d Sec. 2716, at 643 (2d ed. 1983) [quoting United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) ]. See also Lindley v. Amoco Production Co., 639 F.2d 671, 672 (10th Cir.1981).
 
 
 12
 GENUINE ISSUES OF MATERIAL FACT IN CONTRACT ACTIONS
 
 
 13
 After carefully reviewing the entire record, we hold that the district court did not err by granting summary judgment in McCulloch's favor on the indemnity issue. First, we agree that there is no genuine issue of material fact regarding this proposition. Certainly, the question concerning the interpretation of a written agreement is one of fact. See Corbin on Contracts Secs. 545-554 (1952). Thus, in an ambiguous contract, if the intent of the parties is disputed, a genuine issue of material fact exists which cannot be determined summarily by the court. See 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d Sec. 2730.1, at 273-75 (2d ed. 1983) [quoting Oil Trading Assoc's., Inc. v. Texas City Refining, Inc., 201 F.Supp. 846, 849 (S.D.N.Y.1962) ]. The initial question, however, concerning the existence of an ambiguity is one of law that may be decided summarily by the court. 10A Wright, Miller & Kane, supra Sec. 2730.1, at 275-79. If the language is clear, the parties' intentions are not at issue.
 
 
 14
 Although AEP and McCulloch dispute the meaning of the language in Article XXIII, the district court could have[4] determined it to be unambiguous. Thus, because we hold that the language of Article XXIII is clear, no factual question arises concerning the parties' intentions. Summary judgment is, therefore, the proper procedure to follow in this case.
 
 CONTRACTUAL INDEMNIFICATION
 
 15
 Second, we hold as a matter of law, that the language of the 1975 Contract does not require McCulloch to indemnify AEP. The obligation to indemnify AEP was solely that of the operator, Braztah. Under Utah law, the interpretation of a contractual provision requires the determination of the intentions of the parties at the time it was made. DuBois v. Nye, 584 P.2d 823, 824-25 (Utah 1978); Barrus v. Wilkinson, 16 Utah 2d 204, 398 P.2d 207, 208 (1965). Those intentions may be found from the instrument itself if it is sufficiently clear. Oberhansly v. Earle, 572 P.2d 1384, 1386 (Utah 1977).
 
 
 16
 Article XXIII(a) clearly states that McCulloch merely covenanted to "cause" or to encourage Braztah to perform its agreements and obligations under the Contract, i.e., indemnification of AEP pursuant to Article XXX. The language does not require McCulloch to "perform" Braztah's obligations. To bolster this reading of Article XXIII(a), it is noteworthy that the language of part (b) of the same Article does in fact require McCulloch to actively perform under the Contract in the event its subsidiaries fail to perform.[5] If the parties had intended McCulloch to actually "perform" Braztah's indemnification obligations, they could have expressly said so, as they did in part (b).
 
 
 17
 We understand that, because Braztah no longer exists, AEP will not be entitled to a contractual right of indemnity from any party under the language of the Contract. However, absent some unconscionability at the time of a contract's formation, courts will not be concerned with how the parties fare thereunder. Holley v. Federal-American Partners, 29 Utah 2d 212, 507 P.2d 381, 383 (1973). We hold, therefore, that the district court did not err by finding no contractual right of indemnity in AEP against McCulloch.[6]
 
 COMMON LAW INDEMNIFICATION
 
 18
 Finally, we hold as a matter of law, that AEP is not entitled to common law indemnity from McCulloch. AEP contends that the Utah Supreme Court has recognized a right of common law indemnity in a party who is secondarily (passively) liable and who has sustained a loss to the injured party. See Salt Lake City v. Schubach, 108 Utah 266, 159 P.2d 149 (1945). AEP argues that it was passively liable and McCulloch was actively liable for Gomez' injuries;[7] thus, it should be allowed a claim of common law indemnity against McCulloch as a matter of law.
 
 
 19
 The only Utah decision dealing with this indemnity issue is Salt Lake City v. Schubach, supra, written in 1945. Since that opinion was rendered, however, the Utah Legislature has enacted a comparative negligence statute. See Utah Code Ann. Sec. 78-27-37 to -43 (1953). McCulloch contends that by adopting a comparative negligence doctrine, the Utah Legislature has abrogated any theory of common law indemnity. We disagree.
 
 
 20
 Initially, we note that because this is a diversity case and because there are no Utah state judicial decisions on this question since the comparative negligence statute was enacted, we must determine this issue as we believe the Utah Supreme Court would. See 19 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction Sec. 4507, at 89 (1982); City of Aurora, Colorado v. Bechtel Corp., 599 F.2d 382, 386 (10th Cir.1979). A review of the decisions from comparative negligence jurisdictions reveals that a clear majority have held that the statutory adoption of a comparative negligence scheme effectively abrogates the theory of indemnity based on the active/passive negligence dichotomy. See, e.g., Turcon Construction, Inc. v. Norton-Villiers, Ltd., 139 Cal.App.3d 280, 188 Cal.Rptr. 580, 583 (1983) [citing Li v. Yellow Cab Co., 13 Cal.3d 804, 532 P.2d 1226, 119 Cal.Rptr. 858 (1975) ]; Kennedy v. City of Sawyer, 228 Kan. 439, 618 P.2d 788, 798 (1980); Tolbert v. Gerber Industries, Inc., 255 N.W.2d 362, 367-68 (Minn.1977); Consolidated Utility Equipment Services, Inc. v. Emhart Manufacturing Corp., 123 N.H. 258, 459 A.2d 287, 289 (1983); Dole v. Dow Chemical Co., 30 N.Y.2d 143, 153, 282 N.E.2d 288, 295, 331 N.Y.S.2d 382, 391-92 (1972); Pachowitz v. Milwaukee & Suburban Transport Corp., 56 Wis.2d 383, 202 N.W.2d 268, 270-72 (1972).[8] Although we believe that the Utah Supreme Court might follow this contemporary analysis, the Utah statute differs from the statutes of those jurisdictions because it expressly retains certain rights of indemnity. Section 78-27-41 (1953) provides in pertinent part: "Nothing in this act shall affect: .... (2) Any right of indemnity which may exist under present law." (emphasis added). Because of this express exception to the comparative negligence act, we hold that there is no abrogation of any existing right to common law indemnity in Utah.
 
 
 21
 We must now decide whether the Schubach court established a right to common law indemnity based on the active/passive negligence dichotomy. We hold that, regarding private parties, it did not. In Schubach, Salt Lake City sought indemnity from the owner and one tenant of a store building abutting a city sidewalk upon which a pedestrian had tripped and injured herself. The pedestrian had previously recovered a judgment from the city. Thus, the Schubach case involved only a dispute between a municipal corporation and two parties who had a responsibility to maintain a public sidewalk in a safe condition. We conclude the court held only that under those circumstances a municipal corporation may seek indemnity because, as a matter of law, it is passively negligent and the owner and tenant are actively negligent.[9] Salt Lake City v. Schubach, supra 159 P.2d at 155 (quoting City of Spokane v. Crane Co., 98 Wash. 49, 167 P. 63, 64 (1917)), 157-58. It would be reckless speculation for a federal court to read the Schubach decision so expansively as to establish a right to common law indemnity in Utah for private parties. We prefer to limit the Schubach decision to the facts before that court, particularly because no other Utah decision has addressed this specific question. We hold, therefore, that no right to common law indemnity for private parties based on the active/passive negligence dichotomy was established by Schubach.
 
 
 22
 The question remains whether we believe the Utah Supreme Court would now establish a right to common law indemnity for private parties based on the active/passive negligence dichotomy. We decline to predict what position the Utah court would take in light of the particular circumstances involved here. In view of the language in section 78-27-41, supra, it would be at best a speculative gesture for a federal court to adopt this common law right as part of Utah tort law. As previously noted, that section expressly excepts from the comparative negligence act a right to indemnity which "exist[s] under present law." We do not find any such right, based on the active/passive negligence dichotomy, to be presently existing under Utah tort law. Accordingly, we decline to establish one that would apply retroactively to these parties.
 
 
 23
 Thus, we hold as a matter of law, that AEP cannot obtain common law indemnity from McCulloch. The district court could have[10] applied this substantive law when it granted McCulloch's motion for summary judgment. Therefore, because our view of current Utah law supports the district court's determination, we hold that summary judgment was properly granted in McCulloch's favor.
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 These defendants were affiliated in the ownership of the mine at issue in this case--the Braztah No. 3 Mine
 
 
 [2]
 The district court dismissed without prejudice the claim for contribution
 
 
 [3]
 The 1975 Contract was necessary because governmental regulations required AEP, a public utility, to own the Braztah Mines before it could make expenditures for them
 
 
 [4]
 It is unclear what the district court specifically determined when ruling on this motion for summary judgment; the court merely entered a minute order granting the motion. Although Rule 52(a) makes specific findings of fact and conclusions of law unnecessary on summary judgment motions, they would be helpful in our review. See 10 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d Sec. 2716, at 647-50 (2d ed. 1983)
 
 
 [5]
 Article XXIII(b) provides in pertinent part: "McCulloch agrees to give or cause its subsidiaries to give I & M [AEP] a right of first refusal ...." R., Supp.Vol. XVI at 67
 
 
 [6]
 McCulloch also argues on appeal that by entering into the 1979 Settlement Agreement, AEP abandoned its alleged contractual right of indemnity against McCulloch under the 1975 Contract. See Brief of Appellee at 9-13; R., Vol. II at 448-49. Because we have held that AEP possessed no contractual right of indemnity against McCulloch, we need not determine the question of an abandonment of that right
 
 
 [7]
 AEP contends that McCulloch, through Braztah, actually controlled both the site of the injury and the instrumentality which caused the injury; AEP merely failed to observe and correct the hazards created by McCulloch's negligence. See Brief of Appellants at 14-16; Reply Brief of Appellants at 5
 
 
 [8]
 The rationale applied by these various state decisions is sound. The language of the Kansas Supreme Court is instructive:
 In actions where comparative negligence is in issue the court deals in percentages of causal responsibility, and distinctions between primary, secondary, active and passive negligence lose their previous identities. The nature of misconduct in such cases is to be expressed on the basis of degrees of comparative fault or causation, and the all or nothing concepts are swept aside.
 Kennedy v. City of Sawyer, 228 Kan. 439, 618 P.2d 788, 798 (1980).
 
 
 [9]
 At the time of the Schubach decision, there was a Utah statute which authorized a city to require owners or occupants of abutting property to keep sidewalks free from obstructions. See Utah Code Ann. Sec. 10-8-23 (1953). Although the Schubach court cited this statute, it relied primarily upon judicial decisions from other jurisdictions--particularly City of Spokane v. Crane Co., 98 Wash. 49, 167 P. 63 (1917)
 
 
 [10]
 As we explained in note 4, supra, we are not provided with the district court's specific determinations. This is of more concern to us regarding one of the questions with which we are now dealing: what effect, if any, the Utah Comparative Negligence Act has on common law indemnity actions. In reviewing a summary judgment proceeding, an appellate court must consider only those papers that were before the district court, and the parties cannot propose new arguments on appeal. 10 Wright, Miller & Kane, supra Sec. 2716, at 650-52. A review of the record that was before the district court did not reveal any presentation by McCulloch of this theory. However, because AEP's Reply Brief on appeal failed to challenge this as a "new" argument, we will consider it