Merrimack
No. 86-014

JASWELL DRILL CORPORATION

v.

GENERAL MOTORS CORPORATION

May 28, 1987

*Eaton, Solms, Mills & McIninch*, of Manchester (*Richard Mills* and *Steven Ruddock* on the briefs, and *Mr. Ruddock* orally), for the plaintiff.

*Myers, Jordan & Duffy*, of Concord (*David Jordan* on the briefs and orally), for the defendant.

BATCHELDER, J. Jaswell Drill Corporation (Jaswell), the plaintiff in this third-party action for contribution and indemnity, appeals

the dismissal of its claim by the Superior Court (*Bean,* J.). We affirm in part and reverse in part.

D. G. Foster Artesian Well Co. (Foster), the plaintiff in the underlying action, is suing Jaswell for negligence, breach of contract, and breach of warranty for damages allegedly arising from the purchase and operation of a Jaswell drilling rig. In turn, Jaswell filed a third-party claim against General Motors Corporation (GM), alleging that any damages sustained by Foster are directly attributable to a defective component part; that is, an industrial diesel engine supplied by GM. Jaswell argues that it is entitled to contribution or indemnity from GM for any damages which may be awarded to Foster. Foster has also commenced an action against GM which is similar to its action against Jaswell, and the three actions have been consolidated by the superior court. On December 11, 1985, the superior court granted GM's motion to dismiss Jaswell's claim based on our decisions in *Consolidated Utility Equipment Services, Inc. v. Emhart Manufacturing Corp.,* 123 N.H. 258, 459 A.2d 287 (1983) and *Hamilton v. Volkswagen of America,* 125 N.H. 561, 484 A.2d 1116 (1984), because Jaswell's claim was "actually an action for contribution."

In the interim since the superior court's decision, and after initial briefing and oral argument of this appeal, the legislature enacted a statute which supersedes the common law rule precluding contribution among tortfeasors. The Act Relative to Tort Reform and Insurance, Laws 1986, 227:2 (the Act), adopts the rule of contribution among tortfeasors and allows apportionment of damages. Therefore, we ordered the case to be reargued and permitted the filing of supplemental briefs, requesting the parties to consider whether Jaswell's claim should be determined under the common law rule in effect at the time Jaswell filed this action against GM, *see, e.g., Hamilton supra,* or whether it should be determined under the Act, the relevant provisions of which "apply to causes of action arising on or after July 1, 1986." Laws 1986, 227:22. This issue turns upon whether the term "causes of action" should be construed as referring to causes of action for contribution or to the underlying causes of action in tort.

The plaintiff argues that the "causes of action" referred to in section 22 are causes of action for contribution, so that the Act rather than the common law applies in this case. The plaintiff argues further that it is entitled to contribution under the Act. The defendant, on the other hand, argues that when the term "causes of action" is considered in light of other provisions of the statute, it is clear that it refers to the underlying causes of action in tort.

We note that some jurisdictions have applied their contribution statutes in cases where the underlying tort occurred prior to the effective date of the statute on the ground that judgment was to be entered or a settlement agreed to after that date. When Colorado enacted the Uniform Contribution Among Tortfeasors Act, for example, it was effective as to "events occurring on and after July 1, 1977." 1977 Colo. Sess. Laws, ch. 195, sec. 2. The Colorado Supreme Court held that the operative "event" referred to in that statute was the settlement or judgment which gave rise to the claim for contribution, rather than the "event" which gave rise to the underlying tort action. *Coniaris v. Vail Associates, Inc.*, 196 Colo. 392, 395, 586 P.2d 224, 225–26 (1978). This decision was based on the rationale that:

> "[N]o cause of action accrues to a joint tortfeasor until there has been a judgment against him or a settlement of the claim. A claim for contribution is an action separate and distinct from the underlying tort. The rights and obligations of the tortfeasors flow, not from the tort, but from the judgment or settlement itself."

*Id.* at 395, 586 P.2d at 225 (citation omitted). *But see Coos-Curry Elec. Co-op, Inc. v. Curry County*, 26 Or. App. 645, 554 P.2d 601 (1976) (no right to contribution where underlying tort occurred prior to effective date of statute). The plaintiff argues that the view espoused by the *Coniaris* court is the better view, and given the facts of that case, we agree. We will not, however, adopt that position because New Hampshire's Act is substantially different from the Uniform Contribution Among Tortfeasors Act construed in *Coniaris. Compare* RSA 507:7-d to -i *with* COLO. REV. STAT. § 13-50.5-101 *et seq.* (Supp. 1986).

The legislature's new approach is very similar to the Uniform Comparative Fault Act, 12 U.L.A. 38–49 (Supp. 1987), in its treatment of comparative fault, together with apportionment of damages and contribution among tortfeasors. RSA 507:7-d, entitled "Comparative Fault," is similar to the former provision concerning comparative negligence, RSA 507:7-a, which it replaces. One notable difference is that former RSA 507:7-a provided for apportionment of damages when a contributorily negligent plaintiff recovered "against more than one defendant," while RSA 507:7-d makes no provision for apportionment of damages. Instead, under the new statutory scheme, RSA 507:7-e provides for apportionment of damages in all actions, and RSA 507:7-e to -h establish a system for contribution because judgments will be entered based on the rules of joint and several liability. When the legislature repealed RSA 507:7-

a to -c and enacted RSA 507:7-d to -i, it clearly intended these provisions to function as a unified and comprehensive approach to comparative fault, apportionment of damages, and contribution.

■■■ Considered in isolation, the term "causes of action" in section 22 of the Act seems ambiguous because it is not immediately clear whether it refers to causes of action for contribution or to the underlying causes of action in tort. However, "the meaning of a statute is to be determined from its construction as a whole and not by construction of isolated words and phrases." *In re John Kevin B.*, 129 N.H. 286, 288, 525 A.2d 281, 283 (1987) (quoting *King v. Town of Lyme*, 126 N.H. 279, 284, 490 A.2d 1369, 1372 (1985)). When considered in conjunction with section 2 of the Act, codified as RSA 507:7-d to -i, it becomes clear that "causes of action" refers to causes of action sounding in tort.

■ If "causes of action" were construed to mean only causes of action for contribution as suggested by the plaintiff, the effect would be to make RSA 507:7-d, the new comparative fault provision, which refers only to tort actions, apply in cases where the underlying tort cause of action had arisen *before* the effective date of the Act. We reject that construction because it is contrary to the plain meaning of the statutory language which provides that the Act applies to "causes of action arising *on or after* July 1, 1986." Laws 1986, 227:22 (emphasis added). In addition, we do not believe that "causes of action" can be read to refer to *both* causes of action for contribution *and* causes of action in tort, because in some cases that construction would result in application of RSA 507:7-e to -h in cases to which RSA 507:7-d did not apply because the underlying tort cause of action arose prior to the effective date of the Act. If the legislature had intended the provisions of section 2 of the Act relating to contribution and apportionment of damages to apply separately from the comparative fault provision in some cases, we would have expected to find express statutory language on this point. *E.g.*, WASH. REV. CODE § 4.22.90 (1985) (Washington legislature expressly provided that provisions of WASH. REV. CODE chapter 4.22 relating to contribution would apply prior to comparative fault provisions in some cases). In the absence of such express statutory direction, we decline to adopt such a construction because it would require a division of section 2 of the Act contrary to the legislature's intent to provide a unified and comprehensive approach to this area of the law. We construe section 22 of the Act to mean that section 2 of the Act applies to "causes of action [in tort] arising on or after July 1, 1986," because that is the only construction which is consistent with both the legislature's intent and the plain meaning of the statutory lan-

guage. Therefore, we hold that Jaswell's claim against GM is to be considered under our common law rules.

Having determined that our common law supplies the basis for decision in this case, we need not consider the merits of Jaswell's claim for contribution because Jaswell concedes that it is not entitled to contribution under common law. Therefore, the superior court's dismissal of Jaswell's claim for contribution is affirmed.

■■ Jaswell argues, however, that the superior court erred in dismissing its claim for indemnification. We agree. On appeal from an order granting a motion to dismiss, the plaintiff's allegations and "reasonable inferences [drawn] from them as construed most favorably to the plaintiff" are assumed to be true. *Hamilton v. Volkswagen of America*, 125 N.H. 561, 562, 484 A.2d 1116, 1117 (1984); *Royer Foundry & Mach. Co. v. N.H. Grey Iron, Inc.*, 118 N.H. 649, 651, 392 A.2d 145, 146 (1978). Considered against the background of Foster's claims, Jaswell's allegations are susceptible of a construction which would permit recovery.

■■ In *Consolidated Utility Equipment Services, Inc. v. Emhart Manufacturing Corporation*, 123 N.H. 258, 459 A.2d 287 (1983), we declined to extend a right of indemnity to passively negligent tortfeasors generally. However, we recognized that one joint tortfeasor had a right to indemnity "against another where the indemnitee's liability is derivative or imputed by law . . . or where an express or implied duty to indemnify exists." *Id.* at 261, 459 A.2d at 288–89. In *Hamilton v. Volkswagen of America, supra* at 563–64, 484 A.2d at 1118 (1984), we explained that an implied agreement to indemnify may exist where an indemnitor performs a service under contract negligently and, as a result, causes harm to a third party in breach of a nondelegable duty of the indemnitee. The rationale for finding an implied agreement to indemnify in that situation is based on "the fault of the indemnitor as the source of indemnitee's liability in the underlying action and, conversely, the indemnitee's freedom from fault in bringing about the dangerous condition." *Id.*

■ Jaswell alleges that Foster may win a judgment against it in the underlying action even though the damages resulting to Foster from the use and operation of the Jaswell drilling rig are directly and solely attributable to defects in the engine supplied by GM as a component part. While this case is distinguished from those discussed in *Hamilton* because GM provided Jaswell with a product rather than a service, that distinction is not controlling. If Jaswell were to prove that its only negligence lay in its failure to discover that the GM engine was defective, then the rationale for implying an indemnity agreement could be applicable in this case.

■ ■ Additionally, it is possible that Jaswell will be found liable for breach of warranty for supplying the rig with a defective engine, although it is not found negligent. In that case also, Jaswell could be entitled to indemnity from GM under the general rule that a "seller suffering and paying a judgment against him by an injured person in a warranty action is entitled to indemnity from a manufacturer who sold the product to him with a similar warranty." *Herman v. General Irrigation Co.*, 247 N.W.2d 472, 479 (N.D. 1976) (company in business of assembling irrigation systems entitled to indemnification from manufacturer of engine used as component part, when engine defects resulted in injury to third-party purchaser and liability to indemnitee); 3A L. FRUMER & M. FRIEDMAN, PRODUCTS LIABILITY § 44.03[1]. Therefore, we reverse the superior court's dismissal of Jaswell's claim for indemnity. We note that, on remand, the use of special questions or a special verdict would be useful in this case to guide the jury in making its determination regarding the separate theories of liability raised in this case. *See Hurley v. Public Service Co. of N.H.*, 123 N.H. 750, 756, 465 A.2d 1217, 1221 (1983) ("trial judges have the inherent power to use special questions and [special] verdicts to guide the jury and to aid in post-verdict review"); *Cunningham v. M–G Transport Services, Inc.*, 527 F.2d 760 (4th Cir. 1975) (trial court correctly submitted special interrogatories to the jury to facilitate separate determinations of theories of liability).

Finally, we address GM's argument that Jaswell's claim is barred by the statute of limitations because an action for breach of warranty must be brought within four years of delivery, RSA 382–A:2–725, and Jaswell did not file its claim within that period. Although the superior court did not rely on this issue as a basis for its decision, the argument was raised below and we consider it now for reasons of judicial economy.

■ The defendant is wrong in its argument. "[C]laims for indemnification . . . do not accrue for the purposes of the statute of limitations until a judgment has been paid by the third-party plaintiff," *Cyr v. Michaud*, 454 A.2d 1376, 1385 (Me. 1983), and the "statute of limitations cannot possibly start to run on an indemnity claim until the party seeking indemnification suffers a loss." *Morrisette v. Sears, Roebuck & Co.*, 114 N.H. 384, 392, 322 A.2d at 7, 12 (1974).

*Affirmed in part; reversed in part.*

All concurred.