Buskey v. Kawasaki                    CV-92-362-B    06/01/94
                 UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW HAMPSHIRE

Jeffrey and Alyse Buskey

     v.                                    Civil No. C-92-362-B

Hooksett Kawasaki, Inc., Kawasaki
Motors Corp. U.S.A., and Kawasaki
Motors Mfg. Corp., U.S.A.

                           O R D E R

     Hooksett Kawasaki Inc.'s motion for summary judgment

requires me to determine whether N.H. Rev. Stat. Ann. 357-C:5, IV

(a) entitles a motor vehicle franchisee to indemnification from

its franchisor for liability incurred as a result of the

franchisee's passive negligence.

                          BACKGROUND[1]

     Jeffrey Buskey was severely injured when the throttle

_____

     [1]In ruling on this motion for summary judgment, I am guided
by the following standards.  Summary judgment is appropriate "if
the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).  The burden is upon the moving party to
establish the lack of a genuine, material, factual issue, Finn v.
Consolidated Rail Corp., 782 F.2d 13, 15 (1st Cir. 1986), and the
court must view the record in the light most favorable to the
non-movant, according the non-movant all beneficial inferences
discernable from the evidence, Oliver v. Digital Equipment Corp.,
846 F.2d 103, 105 (1st Cir. 1988).  If a motion for summary
judgment is properly supported, the burden shifts to the non-
movant to show that a genuine issue exists.  Donovan v. Agnew,
712 F.2d 1509, 1516 (1st Cir. 1983).

allegedly stuck on his 1991 Kawasaki ZX-11 Ninja motorcycle.

Buskey has sued Kawasaki Motors Manufacturing Corporation (the

manufacturer), Kawasaki Motor Corporation (the distributor) and

Hooksett Kawasaki (the seller) in a ten-count complaint alleging

negligence and strict liability against each of the defendants.[2]

The essence of Buskey's claim is that his injuries were caused by

the motorcycle's improperly routed throttle cables.  His specific

claims against Hooksett Kawasaki are that: (1) it is strictly

liable for selling the motorcycle in an unreasonably dangerous

and defective condition (Count VI); and (2) it was passively

negligent in failing to discover the defect in the throttle

cables before it sold Buskey the motorcycle (Count V).

Hooksett Kawasaki has cross-claimed against Kawasaki Motors,

alleging that it is entitled to indemnification pursuant to N.H.

Rev. Stat. Ann. 357-C:5, IV (a).

## DISCUSSION

N.H. Rev. Stat. Ann. 357-C:5, IV states in relevant part:

(a) A franchisor shall indemnify its franchisees from any
and all reasonable claims, losses, damages, and costs,
including attorney's fees resulting from or related to
complaints, claims or suits against the franchisee by third

---

[2]Buskey has also brought a negligent supervision claim
against Kawasaki Motor Corporation and Buskey's wife has brought
loss of consortium claims against each of the three defendants.

parties, including but not limited to those based upon strict liability, negligence, misrepresentation, warranty and revocation of acceptance or recision, where an action alleges fault due to: (1) the manufacture, assembly, or design of the vehicle, parts, or accessories, or the selection or combination of parts or components; (2) service systems, procedures or methods required, recommended or suggested to the franchisee by the franchisor; or (3) damage to the vehicle in transit to the franchisee where the carrier is designated by the manufacturer.

(b) The franchisor shall not be liable to the franchisee by virtue of this section for any claims, losses costs or damages arising as a result of negligence or willful malfeasance by the franchisee in its performance of delivery, preparation, or warranty obligations required by the franchisor, or other services performed; provided, however, that the franchisor shall be liable for damages arising from or in connection with any services rendered by a franchisee in accordance with any service, system, procedure or method suggested or required by the franchisor.

Construing the plain language of the statute, a motor vehicle franchisee is entitled to indemnification from its franchisor in three separate circumstances: (1) where the franchisee has been held strictly liable for selling a motor vehicle that the manufacturer defectively designed, manufactured, or assembled; (2) where the franchisee has been found to be negligent because of actions that were "required, recommended or suggested to the franchisee by the franchisor;" and (3) where a franchisee has been held liable for selling a vehicle that was damaged in transit to the franchisee while in the custody of a carrier designated by the manufacturer. In each of these

3

circumstances, the franchisee is entitled to indemnification because it had done nothing more than to sell the motor vehicle in accordance with the manufacturer's instructions.

There appears to be no dispute in the present case that Hooksett Kawasaki is entitled to indemnification for any liability it may incur pursuant to Buskey's strict liability claim. Indemnification is plainly authorized under these circumstances by subsection (1) of N.H. Rev. Stat. Ann. 357-C:5, IV (a). However, Hooksett Kawasaki asks too much when it seeks indemnification for its passive negligence. The statute permits a franchisee to obtain indemnification for its own negligence only if the franchisee's negligence resulted from following the franchisor's directions. Since Hooksett Kawasaki does not contend that its alleged negligence resulted from following the manufacturer's directions, it is not entitled to indemnification for its passive negligence in failing to discover the motorcycle's alleged defect.[3]

---

[3]I base my decision on the plain meaning of N.H. Rev. Stat. Ann. 357-C:5, IV (a). However, I would reach the same conclusion even if the statute was ambiguous. The New Hampshire Supreme Court has held on several occasions that a statute should not be interpreted to supplant the common law unless the statute clearly expresses such an intention. See, e.g., State v. Hermsdorf, 135 N.H. 360, 362, 605 A2d 1045, 1046 (1992). When N.H. Rev. Stat. Ann. 357-C:5, IV (a) was enacted, New Hampshire's common law did

4

## CONCLUSION

For the foregoing reasons defendant Hooksett Kawasaki's motion for summary judgment on its counterclaim (document no. 43) is granted as to Count VI in Buskey's complaint, but denied as to Count V.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

June 1, 1994

cc:  Peter Culley, Esq.
     Andrew Dunn, Esq.
     George Lindh, Esq.

_____

not allow a passively negligent tortfeasor to obtain indemnification from an active tortfeasor. <u>Consolidated Utility Equipment Services, Inc. v. Emhart Manufacturing Corp.</u>, 123 N.H. 258, 261, 459 A.2d 287, 289 (1983)), but <u>cf.</u> <u>Jaswell Drill Corp. v. General Motors Corp.</u>, 129 N.H. 341, 346, 529 A.2d 875, 877-78 (1987) ("[i]f Jaswell were to prove that its only negligence lay in its failure to discover that the GM engine was defective, then the rationale for implying an indemnity agreement could be applicable in this case").  Since the statute's language does not suggest that it was intended to alter the common law rule regarding indemnification for passive negligence, I cannot interpret the statute to give Hooksett Kawasaki a right to indemnification that it would not have had under the common law.

5