Pond v. Majercik                         CV-94-225-M    09/29/95
                    UNITED STATES DISTRICT COURT FOR THE
                           DISTRICT OF NEW HAMPSHIRE


Patricia Pond, Individually and as
Administratrix of the Estate of Scott Pond,
       Plaintiff,

       v.                                          Civil No. 94-225-M

Donald A. Majercik, and Parker Aviation
Enterprises, Inc., Defendants, and
John McGrath, Executor of the
Estate of Mary Jane McGrath,
       Defendant and Third Party Plaintiff,

       v.

Nathan Pond, Gary Pond, William
Batesole, James Parker, Jr.,
Lebanon Riverside Rotary, an
Unincorporated Association, and
the United States of America,
       Third Party Defendants.


                              O R D E R


       This action arises from a fatal midair collision between an

airplane and a parachutist during an air show in Lebanon, New

Hampshire.  The airplane was piloted by Mary Jane McGrath; Scott

Pond was the parachutist.  Plaintiff Patricia Pond, both

individually and as Administratrix of her husband's estate, sued

the Estate of Mary Jane McGrath (hereinafter "McGrath Estate").

The McGrath Estate counterclaimed against the Pond Estate and

filed third party claims against, among others, Nate and Gary

Pond asserting, _inter alia_, rights to indemnification. Administratrix Patricia Pond, Nate Pond, and Gary Pond (the "Ponds"), now move, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the McGrath Estate's indemnity claims. For the reasons enumerated below, the Ponds' motion to dismiss the indemnity claims is granted.

## I.  BACKGROUND

On July 6, 1993, Parker Aviation ("Parker") in conjunction with the Lebanon Riverside Rotary Club ("Rotary"), obtained a Certificate of Waiver ("Waiver") from the FAA authorizing specific deviations from Federal Aviation Regulations ("FARS") for an air show to be held at the Lebanon Municipal Airport. The Certificate waived compliance with specific FARS from July 23 through 25, 1993. The Waiver allowed certain otherwise prohibited activities, such as aerobatics below 1500 feet and parachute jumps over an open assembly of spectators. As holders of the Waiver, the Rotary and Parker were responsible for the overall safety of the event and compliance with all applicable regulations.

2

Mary Jane McGrath ("McGrath"), a biplane pilot, and the Pond Family Skydivers (a family act that included Scott, Nate, and Gary Pond) were among several performers hired to participate in the air show. On July 24, 1993, the opening day of the air show, a program was distributed highlighting the day's upcoming acts. The program disclosed that Nate and Gary Pond, of the Pond Family Skydivers, would perform a "flag jump" to open the air show. That act consisted of Nate and Gary Pond jumping from the same plane, linking up, deploying their parachutes, and releasing an American flag to trail behind them during their descent.

On the morning of the opening day, Parker held a pre-show briefing for all air show participants, as required by provisions of the Waiver. Among those in attendance were McGrath and Nate Pond (representing the Pond Family Skydivers). Neither Gary Pond, Scott Pond (a Pond Family Skydiver not mentioned in the program), nor William Batesole (the Ponds' jump plane pilot) attended. During the briefing, Parker discussed the various acts listed in the program. For the first time Parker announced that the Pond Skydivers would be circled by two biplanes (one piloted by McGrath) during their descent. That maneuver was not

disclosed in the program.  Parker then deferred to Nate Pond, who described the act in greater detail.

Following the briefing, the first act began as scheduled at approximately 12:45 p.m.  The Ponds' jump plane took off followed by the two biplanes.  Upon reaching the proper altitude, Nate and Gary Pond jumped from the plane and deployed their parachutes.  The first biplane moved towards Nate and Gary Pond and began circling as they descended.  McGrath, piloting the second biplane, followed immediately behind the first.  As McGrath began her approach, a third skydiver, Scott Pond, jumped from the Pond plane.  McGrath's biplane and Scott Pond collided in midair; both McGrath and Pond died.

The McGrath Estate claims that only Nate and Gary Pond were expected to jump and that the Ponds changed the act without informing Mary Jane McGrath.  The McGrath Estate also alleges that Mary Jane reasonably relied on Nate Pond's instructions, and, if McGrath was in any way negligent, it was only in her failure to discover the Ponds' own negligence in failing to inform her that a third skydiver would be jumping.  The McGrath Estate argues that, to the extent it might be liable to Scott

4

Pond's estate, it would be entitled to indemnity from Gary and Nate Pond and Scott Pond's estate. The Ponds in turn have moved to dismiss the indemnity claim pursuant to Fed. R. Civ. P. 12(b)(6).

## II.  STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is one of very limited inquiry, focusing not on "whether the plaintiff will ultimately prevail, but whether [the plaintiff] is entitled to offer evidence to support [the] claims." McLean v. Gaudet, 769 F. Supp. 30, 31 (D.N.H. 1990) (citing Scheur v. Rhodes, 416 U.S. 232, 236 (1974)). A court must take the factual averments within the complaint as true, "indulging every reasonable inference helpful to the plaintiff's cause." Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992); see also Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989)). In the end, a motion to dismiss may be granted under Rule 12(b)(6) "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." Garita, 958 F.2d at 17 (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)).

## III. DISCUSSION

In this diversity action the Ponds' motion to dismiss the McGrath Estate's indemnity claims is governed by New Hampshire law.  See Mottolo v. Fireman's Fund Ins. Co., 830 F. Supp. 658, 663 (D.N.H. 1993) (substantive law of state in which federal court sits governs diversity actions).  The McGrath Estate bases its indemnity claim on two separate theories under New Hampshire law.  First, the McGrath Estate claims that the Ponds have an implied duty to indemnify the Estate under the theory articulated in Consolidated Util. Equip. Serv's v. Emhart Mfg. Corp., 123 N.H. 258 (1983), and its progeny.  Second, the McGrath Estate asserts that New Hampshire has adopted the Restatement (Second) of Torts § 886B(2)(b) (1979), under which the Estate can invoke rights to indemnity.  For the reasons explained below, neither claim survives the Ponds' motion to dismiss.

### A.  Implied Duty to Indemnify

Under New Hampshire law, the right to indemnity is limited to two situations:  "[W]here the indemnitee's liability is derivative or imputed by law . . . or where an express or implied duty to indemnify exists."  Emhart, 123 N.H. at 261 (citations omitted); see also Jaswell Drill Corp. v. General Motors Corp.,

6

129 N.H. 341, 346 (1987) (quoting Emhart); Hamilton v. Volkswagen of Am., 125 N.H. 561, 563 (1984) (same); Hooksett School Dist. v. W.R. Grace & Co., 617 F. Supp. 126, 134 (D.N.H. 1984) (same). The McGrath Estate bases its claim on the second theory articulated in Emhart, the existence of an implied duty to indemnify.[1]

In Hamilton, Justice Souter, speaking for a unanimous New Hampshire Supreme Court, described the situations in which an implied duty to indemnify has been found to exist:

> In each case the indemnitor had agreed to perform a service for the indemnitee. In each, the indemnitor was assumed to have performed negligently. And in each, the result was a condition that caused harm to a third person in breach of a non-delegable duty of the indemnitee.

Hamilton, 125 N.H. at 563 (emphasis added); see also Collectramatic v. Kentucky Fried Chicken Corp., 127 N.H. 318, 320-21 (1985) (quoting Hamilton). The court later expanded its recognition of indemnity rights to include situations in which

---

[1] The McGrath Estate's objection to the Ponds' limited motion to dismiss explicitly states that "the imputed negligence of another . . . [is] not claimed as a basis for indemnity." (McGrath Objection at 8 (document no. 35).) In addition, the McGrath Estate does not claim that there was an express duty to indemnify.

7

the indemnitor agrees to supply the indemnitee with a product,
rather than a service.  Jaswell, 129 N.H. at 346.

The McGrath Estate and the Ponds disagree as to whether the
duty to indemnify implied in these situations must arise from a
contract between the indemnitor and indemnitee.  Decisions
subsequent to Hamilton suggest that the implied duty is a
contractual one.  See Hooksett, 617 F. Supp. at 134 (stating that
implied indemnity under Emhart is contractual in nature and "may
involve . . . [an] implied contract to indemnify."); Jaswell, 129
N.H. at 346 ("an implied agreement to indemnify may exist where
an indemnitor performs a service under contract").  However, the
exact nature of the implied duty is not critical.  It is critical
that the implied duty arise out of some agreement between the
parties.  While the relationship between the parties need not,
perhaps, rise to the level of a contract, an explicit agreement
between the indemnitor and indemnitee for the provision of a
product or service is necessary before an implied duty to
indemnify can arise.

In each case in which the New Hampshire Supreme Court has
found an implied duty to indemnify, the indemnitee claimed to

8

have some agreement with the indemnitor for the provision of services or products. In <u>Wentworth Hotel v. F.A. Gray, Inc.</u>, 110 N.H. 458 (1970), for example, the plaintiff alleged an oral contract for services with the defendant. <u>Id.</u> at 459. It was out of this contract that the implied duty to indemnify arose. <u>Id.</u> at 460. Similarly, in <u>Sears, Roebuck & Co. v. Philip</u>, 112 N.H. 282 (1972), the implied duty to indemnify arose out of an explicit contract for services. <u>Id.</u> at 284, 86. Finally, in <u>Jaswell</u>, 129 N.H. at 343, 46, the duty sprang from an explicit agreement to furnish a product.

Here, the McGrath Estate alleges no agreement between McGrath and the Ponds. Rather, the McGrath Estate claims a right to indemnity as the third party beneficiary of a contract between the Ponds and Parker. Because McGrath, too, had an agreement with Parker and was involved in the jump that was the subject matter of the Pond/Parker contract, the McGrath Estate claims, essentially, that there was an implied agreement for services between McGrath and the Ponds as well. From this implied agreement, the McGrath Estate would also imply a duty to indemnify under <u>Emhart</u>.

9

New Hampshire common law, however, does not yet recognize the "bootstrapping" advocated by the McGrath Estate. No authority has been referenced which would suggest that under these circumstances New Hampshire's common law would imply an agreement between the parties and, from that agreement, also imply a duty to indemnify. Absent an explicit agreement between the parties for the provision of a product or service, New Hampshire law does not appear to recognize an implied duty to indemnify. Because the McGrath Estate does not allege the existence of such an agreement, its claim for indemnity on the basis of an implied duty cannot withstand the Ponds' motion to dismiss.[2]

**B. Restatement (Second) of Torts § 886B**

The McGrath Estate also claims a right to indemnity under the Restatement (Second) of Torts § 886B(2)(b) (1979), which states that indemnity may be implied among tortfeasors if "[t]he indemnitee acted pursuant to directions of the indemnitor and reasonably believed the directions to be lawful." Here, the

_____

[2] This outcome is also in accord with New Hampshire's longstanding policy that indemnity agreements are "rarely to be implied and always to be strictly construed." Collectramatic, 127 N.H. at 321 (quoting Hamilton, 125 N.H. at 564).

10

McGrath Estate alleges that Mary Jane McGrath followed the directions Nate Pond gave at the pre-show briefing. Because § 886B(2)(b) would appear, on its face, to apply to the facts alleged in this case, the validity of the McGrath Estate's indemnity claim turns, at this stage in the proceedings, on whether New Hampshire has adopted or would follow § 886B(2)(b).

In support of its claim that § 886B(2)(b) is the law of New Hampshire, the McGrath Estate cites Sears, Roebuck & Co. v. Philip, 112 N.H. 282 (1972), and Riparian Land Corp. v. Cannuli, No. 87-237-D, slip op. at 8 (D.N.H. Nov. 24, 1987), both of which mention § 886. Sears, the only published New Hampshire case to refer to § 886, merely cites a tentative draft of § 886B in order to illustrate a point unrelated to subsection (2)(b) (upon which the McGrath Estate relies). Sears, 112 N.H. at 286-87. Sears neither cites to § 886B(2)(b) specifically, nor relies on it in reaching its judgment. Similarly, Riparian merely refers to § 886B(2)(b) within a long list of authorities in order to illustrate the theory of implied indemnity writ large. Riparian, No. 87-237-D at 8.

11

Given New Hampshire's unmistakable policy that indemnity agreements are "rarely to be implied and always to be strictly construed," Collectramatic, 127 N.H. at 321 (quoting Hamilton, 125 N.H. at 564), it is far from certain that New Hampshire has adopted, or would follow, the Restatement (Second) of Torts § 886B(2)(b). A federal court called upon to apply state law must "take state law as it finds it: `not as it might conceivably be, some day; nor even as it should be.'" Kassel v. Gannett Co., 875 F.2d 935, 950 (1st Cir. 1989) (quoting Plummer v. Abbott Laboratories, 568 F. Supp. 920, 927 (D.R.I. 1983)). Expansive reading and recognition of new causes of action under New Hampshire law are tasks more appropriately left to the New Hampshire Supreme Court. Therefore, consistent with the federal courts' obligation to "apply [state] law according to its tenor," Kassel, 875 F.2d at 950, the court declines to expand New Hampshire's common law into areas not yet considered by the New Hampshire Supreme Court. The McGrath Estate's claim for indemnity based on § 886B(2)(b) also does not survive the Ponds' motion to dismiss.

**IV. CONCLUSION**

12

For the foregoing reasons, third party plaintiff's claims for indemnity do not survive third party defendants' motion to dismiss. Accordingly, the Ponds' limited motion to dismiss the indemnity claims (document no. 31) pursuant to Fed. R. Civ. P. 12(b)(6) is granted.


SO ORDERED.


_____
Steven J. McAuliffe
United States District Judge

September 29, 1995

cc: Michael G. Gfroerer, Esq.
    Jeffrey B. Osburn, Esq.
    David B. Kaplan, Esq.
    Garry R. Lane, Esq.
    Charles W. Grau, Esq.
    Mark Scribner, Esq.
    David H. Bradley, Esq.
    Douglas J. Miller, Esq.
    Michael G. McQuillen, Esq.
    Richard B. Couser, Esq.
    Jeffrey S. Cohen, Esq.
    Ronald L. Snow, Esq.
    James C. Wheat, Esq.
    Gretchen Leah Witt, Esq.
    Thomas K. Pfister, Esq.