Hillsborough, {
   Dec., 1897. }

### GAGNON *v.* DANA & *a.*

A gratuitous lender of a chattel is not liable for an injury to the borrower, or his servant, from defects in it not known to the lender.

In such a case, it is erroneous to instruct the jury that it is immaterial whether anything was paid for the use of the chattel or not, or that the liability of the defendant is to be determined by the rule applicable to master and servant in respect of tools and appliances.

When one person lends or hires his servant to' another for a particular employment, the servant is to be regarded as the servant of the latter for anything done in that employment.

If a motion for a nonsuit founded upon an alleged deficiency in the plaintiff's evidence is erroneously denied, and the defendant goes on with the trial and introduces his evidence, a verdict for the plaintiff will not be set aside if the deficiency of his evidence is supplied by one side or the other before the cause is submitted to the jury.

CASE, for personal injuries resulting from the fall of a staging at the Sacred Heart Hospital, in Manchester, occasioned by the breaking of an unsound and decayed bracket. Verdict for the plaintiff.

The plaintiff is a carpenter of many years' experience and fully understood all the duties and risks incident to that employment, one of which is the putting up of wall brackets to support the staging on which he is to work.

The work on the hospital was being done by one Bradley, the owner of the property, who employed one Gay to superintend the work, hire and pay the men, and buy the materials. In the performance of these duties, Gay went to the defendants and engaged St. Lawrence, their superintendent, and all the other men

in their employ, one of whom was the plaintiff, under an arrangement by which the defendants were to receive the same wages the men were then receiving, and twenty-five cents a day additional for each man furnished by them; and the men went to work on the hospital accordingly. The defendants were not employed on the building and had nothing to do with it aside from the letting of their men.

By Gay's direction, St. Lawrence acted as foreman of all the men on the job, and kept their time and reported the same to Gay, who kept the pay-roll, paid the men directly hired by him, and also paid the defendants in a lump sum for the men furnished by them.

Not having a sufficient number of wall brackets for stagings, Gay subsequently borrowed of the defendants about ninety of their brackets, which were used by the men on the job. These brackets were loaned to Gay gratuitously and merely as an accommodation to him; and the loan had nothing to do with the original contract of hiring the defendants' men.

The staging on which the accident happened was built by the plaintiff and one Dana, a fellow-workman. It was about fourteen feet from the ground, and in front of a bay window. The brackets were placed on the building at each side of the window, and a plank about a foot wide, two inches thick, and fourteen feet long, made the staging. The plank touched the window, and was on the outside part of the bracket within six inches of the end of it. While Dana and the plaintiff were on the plank, one of the brackets broke at a point just outside the brace, and the plaintiff fell to the ground, stunned and seriously injured. He testified that the staging looked all right.

Several witnesses for the plaintiff testified that they heard the defendant Dana say soon after the accident that he knew some of the brackets were old and unsound, and that he told St. Lawrence to pick them out and not to use them. This was denied by Dana and by St. Lawrence; and Dana further testified that he knew of no unsoundness in the brackets when they were loaned.

At the close of the plaintiff's evidence, a motion for a nonsuit was denied, subject to exception. At the close of all the evidence, the motion was renewed by the defendants, who also moved that a verdict be directed for them. The motions were denied, and the defendants excepted.

Among other things, the court instructed the jury that a master is not liable unless he knew or ought to have known of the defect that caused the injury to his servant; that if the defendants knew or ought to have known that the bracket was unsafe, they would be liable; and that it was not material whether anything was paid for the use of the bracket or not, — to all which

the defendants excepted.  They also asked for the following, among other instructions, and excepted to the refusal to give them :

"(1)   When one person lends his servant to another for a particular employment, the servant, for anything done in that particular employment, must be dealt with as a servant of the man to whom he is lent, although he remains the general servant of the person who lent him.

"(2)   At the time of the accident the plaintiff was performing work for Denis M. Bradley, under the control and direction of his superintendent, Alpheus Gay.   At that time he was not under the control and direction of Dana & Provost, and for the purposes of this case he was not their servant.

"(3)   The fact that the plaintiff received his wages from Dana & Provost is immaterial.   The plaintiff being the servant of Bradley, it became the duty of Bradley to furnish suitable brackets and appliances to work with.

"(4)   A lender of anything is not liable to the borrower on account of its unsafe condition unless the lender at the time of the loan had actual knowledge of the defect.

"(5)   If the plaintiff used this bracket in a way for which it was not intended to be used, or in a way for which Dana & Provost would not expect it to be used, he cannot recover.

"(6)   If the plaintiff could have discovered about this bracket all that Dana & Provost could have discovered by inspection, he cannot recover."

*Burnham, Brown & Warren* and *Isaac W. Smith,* for the plaintiff.

*Elijah M. Topliff, David A. Taggart,* and *Reuben E. Walker,* for the defendants.

BLODGETT, J.   The brackets having been loaned by the defendants for the use of the borrower, without any reward or compensation to be received by them from him, their only duty in respect of defects was to inform him of any of which they were aware, and which might make the use of the loan perilous to him or to his servants, one of whom was the plaintiff.   " The ground of this obligation is that when a person lends he ought to confer a benefit, and not to do a mischief."   Shir. L. C. 43, 44, and authorities generally.   But the obligation of a mere lender goes no further than this, and he cannot, therefore, be made liable for not communicating anything which he did not in fact know, whether he ought to have known it or not.   *Mac-Carthy* v. *Young,* 6 H. & N. 329 ; *Blakemore* v. *Railway,* 8 E. & B. 1035, 1050, 1051 ; Shearm. & Red. Neg. (3d ed.), *s.* 197, note ; 2

Par. Cont. (5th ed.) 109 ; 1 Add. Cont. *353 ; 2 Wait Act. & Def. 268 ; Sch. Bailm., s. 79 ; Sto. Bailm., s. 275.

Resting upon such authority, and being so consonant to reason and justice that it cannot but be the law, the rule thus enunciated necessarily renders erroneous the reiterated instruction to the jury that the defendants might be liable for the plaintiff's injury "if they knew or ought to have known that the brackets furnished were unsafe and unsuitable for use on the building." While a gratuitous lender "must be taken to lend for the purpose of a beneficial use by the borrower," and is rightfully "responsible for defects in the chattel, with reference to the use for which he knows the loan is accepted, of which he is aware, and owing to which directly the borrower is injured" (*Blakemore* v. *Railway, supra, per Coleridge*, J.), it would be the grossest injustice, as well as extending the law beyond any recognized principle, to subject him to liability for defects of which he is not aware ; and especially in a case like this, where the defect complained of was apparently as open to ascertainment by the plaintiff as it could possibly have been to the defendants.

The instruction that "it is not material whether anything was paid for the use of the brackets or not," was no less erroneous upon the question of the defendants' liability. While in many respects the duties and liabilities of the parties are materially different in the case of a gratuitous bailment and one for hire, it is enough for the present purpose to observe, that while in the former the benefit is exclusively to the bailee, and therefore the liability of the bailor for defects in the thing loaned extends only to those which are known to him and not communicated to the bailee, in the latter, the bailment being for the mutual benefit of both alike, the bailor's obligation is, and of right ought to be, correspondingly enlarged ; and it is therefore his duty to deliver the thing hired in a proper condition to be used as contemplated by the parties, and for failure to do so, he is justly liable for the damage directly resulting to the bailee, or his servants, from its unsafe condition. This distinction is fundamental and of universal recognition.

The relation of master and servant not existing between the plaintiff and the defendants at the time of his injury, their request to have the jury specifically so instructed should have been granted. The duties and obligations of a master to his servant in respect of tools and appliances for performing the labor for which he is engaged, differ widely from those of a gratuitous lender to the borrower, and a radically different rule obtains in the one case than in the other.

The defendants' additional requests, making actual knowledge of the defect the test of their liability, should also have been given, not only because the law is so, but because under the

instructions which were given, the jury might well have found that the defendants did not know of the defect and still have found them chargeable with it, on the ground that they ought to have known it.

In view of the errors to which attention has been called, it is deemed unnecessary to go farther and specifically consider other exceptions relating to the instructions given and refused; but we think it should be added that, owing to the misapprehension by the court of the obligations of the defendants to the plaintiff and of the legal relation between them, the instructions generally were not such as the case required.

The defendants can take nothing by their exceptions to the denial of their motions for a nonsuit and to direct a verdict in their favor. If at the time the plaintiff rested he had not adduced competent evidence to sustain a verdict in his favor (as to which no intelligent opinion can be expressed without additional facts), it is now immaterial because the defendants, instead of risking their case upon their exception to the denial of their motion for a nonsuit, went on with the trial and introduced their evidence, and the deficiency, if any, of the plaintiff's evidence was supplied by one side or the other before the case went to the jury, inasmuch as it is found that at some stage of the trial there was testimony from numerous witnesses to and against the defendants' knowledge of the bracket's defective and unsound condition; so that when all the proof was in the case, there was no ground of exception for the reason of its insufficiency to sustain a verdict for the plaintiff, and this being so, it is wholly indifferent by which party the proof was introduced. *Fletcher* v. *Thompson*, 55 N. H. 308, 309, and authorities cited; *Oakes* v. *Thornton*, 28 N. H. 44, 47 (*per Woods*, J.). And this testimony also rendered the renewal of the motion at the close of the evidence unseasonable (*Brown* v. *Insurance Co.*, 59 N. H. 298, 307), and precluded the granting of the motion to direct a verdict for the defendants. *Shepardson* v. *Perkins*, 58 N. H. 354, 355.

The result is that the defendants' exceptions on this branch of the case are overruled, and their other exceptions hereinbefore considered sustained.

*Verdict set aside.*

CLARK, J., did not sit: the others concurred.