Poitras v. Apkin & Sons          CV-96-480-JD  08/28/98

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>Russell L. Poitras</u>

   v.                                  Civil No. 96-480-JD

<u>George Apkin & Sons, Inc.</u>


O R D E R


The plaintiff, Russell Poitras, brought this action pursuant to the court's diversity jurisdiction against the defendant, George Apkin & Sons, Inc. ("Apkin"), to recover for injuries Poitras suffered while working for the third party defendant, Janci Metals Recycling, Inc. ("Janci").  Poitras was operating a cable stripping machine that Apkin had loaned to Janci at a job site in Hanover, New Hampshire, when he caught his hands in the rotating wheels and blades of the machine.

Poitras's claims against Apkin are for strict products liability and negligence.  Apkin impleaded Janci and asserted third party claims for indemnity.  Janci filed counterclaims against Apkin to recover or set off worker's compensation payments made to Poitras and any increased premiums paid as a result of the accident.  Before the court are Apkin's motion for summary judgment on Poitras's claims (document no. 12), Janci's motion for summary judgment on Apkin's third party claims (document no. 24), and Apkin's Rule 12 motion (document no. 21)

and motion for partial summary judgment on Janci's counterclaims (document no. 22).

## Background

Apkin is in the business of collecting scrap metal and marketing the scrap to consuming mills. Janci is in the business of recovering scrap from demolished buildings and selling the scrap to companies such as Apkin. Poitras was an employee of Janci. Apkin and Janci have been in a business relationship over a number of years in which Janci has sold all of its nonferrous scrap to Apkin.

In 1994, Janci obtained salvage rights to scrap from the Mary Hitchcock Memorial Hospital building in Hanover, New Hampshire, which was to be demolished. Janci agreed to sell all of the nonferrous metal recovered from the building to Apkin. Apkin agreed to lend its cable stripping machine to Janci to remove insulation from copper cables to be shipped to Apkin. Janci picked up the cable stripping machine from Apkin several weeks after beginning to sell scrap from the hospital to Apkin.

The cable stripping machine consisted of rotating wheels that pulled insulated cable into the machine. Blades mounted on the wheels stripped off the insulation. The machine at the time of the accident did not contain any guards to protect the

operator.  Poitras was using the machine for Janci at the hospital building in 1995 when, while attempting to clean the wheels without turning off the machine, he caught his hands in the wheels and blades and severed some of his fingers.

Poitras brought two claims against Apkin based on this injury.  Count I is a strict products liability claim, in which Poitras alleges that Apkin provided the machine in a defective condition.  Count II is a negligence claim, in which Poitras alleges that Apkin failed to:  (1) ensure that the machine was safe for use; (2) install point-of-operation guards on the machine; and (3) warn intended users of the hazards of which it knew or should have known.

Apkin impleaded Janci, and Janci filed counterclaims against Apkin.  Apkin's third party claims are as follows:  (1) implied indemnity arising from a gratuitous bailment (count I); (2) implied contractual indemnity (count II); and (3) derivative indemnity for Poitras's strict liability claim against Apkin (count III).  In its strict liability, negligent failure to warn, and set off counterclaims against Apkin, Janci seeks to recover or set off the worker's compensation payments paid to Poitras and any increased premiums it must pay due to the accident.

Apkin moved for summary judgment on Poitras's products liability and negligence claims.  Janci moved for summary

judgment on Apkin's indemnity claims.  Apkin, in turn, moved for partial summary judgment on Janci's strict products liability counterclaim.  Additionally, Apkin moved to dismiss each of Janci's counterclaims because Apkin asserts that Janci seeks to recover only unrecoverable losses.

Discussion

Summary judgment is appropriate when material facts are undisputed and the moving party is entitled to judgment as a matter of law.  See Rodriguez-Garcia v. Davila, 904 F.2d 90, 94 (1st Cir. 1990) (citing Fed. R. Civ. P. 56(c)).  The burden is on the moving party to establish the lack of a genuine, material factual issue, see Finn v. Consolidated Rail Corp., 782 F.2d 13, 15 (1st Cir. 1986), and the court must view the record in the light most favorable to the nonmovant, according the nonmovant all beneficial inferences discernable from the evidence.  See Caputo v. Boston Edison Co., 924 F.2d 11, 13 (1st Cir. 1991).  Once the movant has made a properly supported motion for summary judgment, however, the adverse party "must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).

Poitras and Janci each allege in their claims that Apkin is

4

strictly liable under a products liability theory.  Apkin contends that summary judgment should be entered on those claims because it does not deal in cable stripping machines, and its loan of the machine was a one-time event.

The parties agree that New Hampshire law applies in this diversity action.  The standard applicable in this case for strict products liability is set forth in the Restatement (Second) of Torts § 402A.  See Chellman v. Saab-Scania AB, 138 N.H. 73, 77, 637 A.2d 148, 150 (1993).  A plaintiff alleging injury from a defective product must show, among other things, that the defendant was "in the business of selling such a product."  Restatement (Second) of Torts § 402A (1993).

Janci maintains that Apkin need not be a seller of a product to be strictly liable.  Rather, quoting the Restatement (Third) of Torts:  Products Liability § 20 (1998), Janci argues that "commercial nonsale products distributors" including lessors and bailors can also be strictly liable.  Janci's argument, however, misses the mark.

The New Hampshire Supreme Court has held that a lessor of an allegedly defective product, who does not deal in that product and is not in the business of supplying that product, cannot be held strictly liable for injuries that result from the product. Brescia v. Great Road Realty Trust, 117 N.H. 154, 156-57, 373

5

A.2d 1310, 1312 (1977). The course that the New Hampshire courts would take as to a loan, rather than a lease, is thus clear: if the lender is not in the business of distributing the product, it cannot be strictly liable.

Apkin filed an affidavit stating that the loan was a one-time only event, and that Apkin was not in the business of distributing cable stripping machines. No evidence to the contrary has been offered. Accordingly, in the absence of a genuine issue of material fact on that matter, judgment is entered as a matter of law in favor of Apkin on Poitras's strict products liability claim and on Janci's strict liability counterclaim.[1] Count III of Apkin's third party claims against Janci, asserting an indemnity claim for strict liability, is therefore dismissed and Janci's motion for summary judgment on that claim is granted.

---

[1] Janci contends that summary judgment in Apkin's favor on its strict liability counterclaim should not be entered because Apkin did not include a statement of facts not in dispute in connection with its motion on the counterclaims, as required by Local Rule 7.2(b). Apkin, however, included such a statement in its memorandum in support of its motion on Poitras's claims. Apkin requested in its brief on Janci's counterclaims that the court refer to Apkin's memorandum on Poitras's claims because the reasons for granting both summary judgment motions were the same. Janci therefore had notice of the facts not in dispute with respect to its strict liability claim and cannot demonstrate any prejudice. No sanction for noncompliance is appropriate here. See Fed. R. Civ. P. 83(a)(2).

6

Apkin asserts, in its motion on Poitras's negligence claims, that the hazard was obvious, that its loan of the machine was gratuitous, and that gratuitous bailors are not obligated to warn of obvious hazards. With respect to the argument that the risk was apparent, Apkin provided uncontested evidence through an affidavit showing that the machine clearly contained no point-of-operation guards, and that, if an operator attempted to clean the wheels without turning off the machine, the risk that the operator could injure his or her hands in the mechanism was obvious. Apkin has therefore satisfied its initial burden of demonstrating the absence of a genuine, material factual issue on the question of the obvious nature of the risk. Because Poitras has failed to carry his burden of setting forth specific facts showing that there is a genuine, material issue for trial, the court finds, as a matter of law, that the risk to users was obvious. See Fed. R. Civ. P. 56(e).

The entry of summary judgment on the obvious nature of the risk further reduces the matters at issue. When a hazard is obvious, there is generally no duty to warn of the risk. See Thibault v. Sears, Roebuck & Co., 118 N.H. 802, 808, 395 A.2d 843, 846 (1978) ("[S]ome products, such as carving knives, are obviously and inherently dangerous. When a risk is not apparent, however, the user must be adequately and understandably warned of

7

concealed dangers."); see also Brochu v. Ortho Pharm. Corp., 642 F.2d 652, 656 (1st Cir. 1981) (citing Thibault); Gagnon v. Dana, 69 N.H. 264, 267, 39 A. 982, 984 (1898) (gratuitous bailors obligated to warn only of known, concealed risks). This principle is reflected in the Restatement (Second) of Torts § 388 (1965), which states:

> One who supplies . . . a chattel for another to use is subject to liability . . . if the supplier:
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

(emphasis added). This principle applies whether or not the bailment was gratuitous. See Restatement (Second) of Torts § 388, cmt. c (persons included as suppliers include "all kinds of bailors, irrespective of whether the bailment is for a reward or gratuitous").

In this case, the risk presented by the cable stripping machine was obvious. No facts have been presented that might give rise to a duty to warn of an obvious risk, and Poitras has not claimed that additional time for discovery on that issue is

8

necessary.  Apkin is therefore entitled to summary judgment on the negligent failure to warn claim of Poitras (count II).[2] Poitras's allegations in count II of the Complaint relating to the failure to ensure that the machine was safe and the failure to install point-of-operation guards are not affected by this ruling.  Cf. Ogletree v. Navistar Int'l Transp. Corp., 500 S.E.2d 570, 572 (Ga. 1998) ("'The bottom does not logically drop out of a negligence case against the maker when it is shown that the purchaser knew of the dangerous condition.'" (citation omitted)).

Poitras's sole contention in response to Apkin's motion on its negligence claim is that Apkin's loan of the machine was mutually beneficial, not gratuitous.  A gratuitous bailment, as opposed to one for mutual benefit, is one in which the transfer of the bailed property is without compensation, for the sole benefit of the bailor or bailee.  See 8A Am. Jur. 2d Bailments §§ 7-8 (1997).  The bailor's duty to the bailee is broader if the bailment was for mutual benefit.[3]  See Gagnon, 69 N.H. at 267, 39

---

[2]  The same rationale calls into question the continued viability of Janci's negligent failure to warn counterclaim. Apkin, however, did not move for summary judgment on it.  Whether Janci had notice and an adequate opportunity to oppose summary judgment is questionable.  In any case, for reasons stated infra, the court grants Apkin's motion to dismiss Janci's negligence counterclaim.

[3]  If a bailment is for mutual benefit, the bailor's obligation includes the broader duty "to deliver the thing hired

A. at 984.

It is undisputed that Janci did not pay Apkin for use of the machine, and that Janci expected to save or make money as a result of the loan.  Poitras's contention is that Apkin also expected to benefit from the transaction by the generation of goodwill and enhanced business relations with Janci.

There is no case in New Hampshire directly addressing whether a bailment for mutual benefit requires payment or monetary consideration.  The law in other jurisdictions is that mutual benefit does <u>not</u> require that "actual money or other consideration pass between the parties; rather a possibility or chance of an expected profit is sufficient to make the relationship one for the mutual benefit of the parties."  8A Am. Jur. 2d <u>Bailments</u> § 10, at 474 (1997).

> A mutual benefit may exist . . . even though the
> parties did not contemplate compensation in the
> ordinary sense.  The character or certainty of
> compensation is not the distinguishing feature; the
> critical factor is whether some profit or benefit was
> expected.  Where the facts of a particular case suggest
> that some profit or benefit may have been anticipated,
> whether the bailment was gratuitous or for mutual
> benefit is a factual one to be determined at trial.

<u>Fili v. Matson Motors, Inc.</u>, 590 N.Y.S.2d 961, 963 (App. Div.

---

in a proper condition to be used as contemplated by the parties, and for failure to do so, he is justly liable for the damage directly resulting to the bailee, or his servants, from its unsafe condition."  <u>Gagnon</u>, 69 N.H. at 267, 39 A. at 984.

1992) (citations omitted) (dealership's loan of vehicle to customer while customer's car was being repaired, pursuant to policy calculated to maintain customer satisfaction and confidence in dealership, raised question of fact for jury regarding whether loan was gratuitous or for mutual benefit).

Citing <u>Bailey v. Innovative Management & Investment, Inc.</u>, 916 S.W.2d 805, 810 (Mo. Ct. App. 1995), Apkin argues that goodwill is insufficient as a matter of law to constitute a benefit. In <u>Bailey</u>, the defendant permitted its employee to borrow a nail gun. The defendant's president stated in an affidavit that his company had received no benefit from the loan. The court noted that plaintiff had failed to present any evidence to contradict that assertion. To defeat the defendant's motion for summary judgment, plaintiff relied solely on proof that the employee obtained the nail gun because he was currently employed by the defendant. Plaintiff argued that the defendant therefore benefitted from "the satisfaction of its employees." <u>Id.</u> The court in that case found plaintiff's proof of the "employment connection, standing alone" to be insufficient to raise a genuine issue of material fact for the jury. <u>Id.</u>

In this case, however, there is deposition testimony suggesting that Apkin expected to receive "enhanced relations with a customer" as the quid pro quo for lending the cable

11

stripping machine to Janci.  Such evidence, in the context of

other evidence presented to the court in this case, is sufficient

to raise a genuine issue of material fact for the jury on whether

Apkin expected a benefit, so that the bailment would not be

gratuitous.[4]  Accordingly, Apkin's motion for summary judgment on

the question of whether the bailment was gratuitous is denied.

Apkin alleges in count I of its third party claims against

Janci that an implied duty of indemnity arose from the gratuitous

bailment between Janci and Apkin.  That claim is moot because of

the disposition of other issues in this case.  The liability of a

bailor in the context of a gratuitous bailment extends only to

risks that were known to the bailor and were not equally apparent

to the bailee.  See Gagnon, 69 N.H. at 267, 39 A. at 984.  Should

---

[4]  See Hartmann v. Black & Decker Mfg. Co., 547 A.2d 38, 42
(Conn. App. Ct. 1988) (employee's after-hours use of employer's
tools as fringe benefit of employment was bailment for mutual
benefit, calculated by management to promote goodwill and
productivity among employees); Federal Compress & Warehouse Co.
v. Swilley, 171 So. 2d 333, 337 (Miss. 1965) (evidence of mutual
benefit included that bailor "was interested in maintaining the
satisfactory business relations that had existed between it and
[the bailee] for over thirty years to the end that [the bailee]
would continue sending" its product to bailor); Ferrick
Excavating & Grading Co. v. Senger Trucking Co., 484 A.2d 744,
749 (Pa. 1984) (in case where defendant lent its truck to move
plaintiff's equipment and defendant damaged that equipment,
evidence that both parties had "looked to the future when each
would be available to help the other" was sufficient to raise
question of fact for jury on whether bailment was gratuitous).

the trier of fact determine that the bailment was gratuitous, Apkin will not be liable to Poitras because the risk was obvious. On the other hand, should the trier find that the bailment was not gratuitous, the question of whether an implied duty of indemnity arises from a gratuitous bailment would be irrelevant. Accordingly, Apkin's third party claim for indemnity for a gratuitous bailment is dismissed, and Janci's motion for summary judgment on that claim is granted.

Janci has moved for summary judgment on Apkin's remaining indemnity claim. Apkin asserts that a duty of indemnity was implied in the oral sales contract between it and Janci, to the extent that the contract included Apkin's agreement to lend the cable stripping machine.

Under New Hampshire law, "indemnity agreements are rarely to be implied." Hamilton v. Volkswagen of America, Inc., 125 N.H. 561, 564, 484 A.2d 1116, 1118 (1984) (citations omitted). That rule reflects "a simple notion founded in pragmatism and fairness, that those who are negligent should bear responsibility for their negligence." Id., 484 A.2d at 1118. In the rare instances where an implied duty to indemnify has been found, the rationale has been based on "the fault of the indemnitor as the source of the indemnitee's liability in the underlying action and, conversely, the indemnitee's freedom from fault in bringing

13

about the dangerous condition." <u>Hamilton</u>, 125 N.H. at 563-64, 484 A.2d at 1118.

Apkin argues that a duty of indemnity may be implied in the contract between it and Janci. Apkin attempts to make the facts of this case fit those in <u>Jaswell Drill Corp. v. General Motors Corp.</u>, 129 N.H. 341, 346, 529 A.2d 875, 878 (1987). In that appeal of the dismissal of an indemnity claim, the court reversed in part, concluding that Jaswell, a company alleged to be liable in negligence for manufacturing a defective product, could maintain an indemnity claim against GM, the manufacturer of a component part. The court reasoned that the rationale of implying an indemnity agreement for the benefit of a tortfeasor without fault could be applicable, if the factfinder determined that Jaswell's only negligence lay in its failure to discover that the GM component was defective. <u>See</u> <u>id.</u>, 529 A.2d at 878. Apkin argues that an implied indemnity agreement could similarly be found in this case if Apkin's only negligence were its "failure to discover" that Janci was negligent in its supervision, instruction, and employment of Poitras, a youth working in a hazardous job.

The distinction between <u>Jaswell</u> and this case is that Apkin's failure to discover a dangerous condition solely caused by Janci cannot be the basis for finding Apkin liable under

14

Poitras's claims.  The claims remaining in the case allege Apkin's negligence in failing to provide the machine to Janci in a safe condition and in failing to install point-of-operation guards, not Apkin's negligent failure to discover the conditions of Poitras's employment.  Indeed, because of the worker's compensation statute, Janci's negligence is not a defense available to Apkin with respect to Poitras's claims.  See Del Rio v. Northern Blower Co., 574 F.2d 23, 28-29 (1st Cir. 1978) (employer's negligence is "not relevant" in action by employee against third party) (citing Bilodeau v. Oliver Stores, Inc., 116 N.H. 83, 88, 352 A.2d 741, 745 (1976)).

Moreover, in Jaswell and the other cases where the New Hampshire court found an implied indemnity agreement, the indemnitor owed the indemnitee a duty to avoid creating the dangerous condition.  See Jaswell, 129 N.H. at 347, 529 A.2d at 878 (warranty in sales contract relating to defective part); William H. Field Co. v. Nuroco Woodwork, Inc., 115 N.H. 632, 634, 348 A.2d 716, 718 (1975) (noting that implied indemnity cases in New Hampshire have involved contractor's breach of its duty to indemnitee to perform work with due care) (pre-Jaswell decision). Apkin presents no facts regarding the sales contract with Janci or the bailment relationship indicating that Janci owed Apkin a duty relating to any dangerous condition resulting from its

15

employment, supervision, or instruction of Poitras.  Accordingly, the rationale recognized in New Hampshire for implying an indemnity agreement is inapplicable.  Janci's motion for summary judgment on Apkin's implied contractual indemnity claim (count II) is granted.

Apkin's Rule 12 motion on Janci's counterclaims is the final matter pending before the court.  Apkin has moved to dismiss the counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6).  Because Apkin has already filed a reply to Janci's counterclaims, however, the pleadings have closed under Fed. R. Civ. P. 7(a).  As such, the court will treat the motion to dismiss as a motion for judgment on the pleadings.  See Fed. R. Civ. P. 12(c).  Pursuant to Rule 12(c), Apkin's motion will be granted if, accepting all of the factual allegations in the pleadings as true, and drawing every reasonable inference helpful to Janci's cause, "it appears beyond doubt that [Janci] can prove no set of facts in support of [its] claim which would entitle [Janci] to relief."  Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988).

Apkin has moved to dismiss Janci's negligent failure to warn counterclaim on the ground that as a matter of law both types of relief requested - reimbursement for worker's compensation payments and increased premiums - are unrecoverable.  In light of

16

the worker's compensation statute, Apkin's contention is correct as to the claim for recovery of payments.

The worker's compensation statute, N.H. Rev. Stat. Ann. ("RSA") § 281-A, provides a no-fault system for providing limited compensation to an injured employee as a substitute for common law remedies in tort. See <u>Bilodeau</u>, 116 N.H. at 86, 352 A.2d at 743. To ensure that the loss from the wrongdoing falls on the wrongdoer, and that the worker receives fair compensation, the employee receiving benefits may also bring a tort action against a third party tortfeasor. See <u>Bilodeau</u>, 116 N.H. at 87, 352 A.2d at 744. Employers are immune from their injured employee's tort claims, <u>see</u> RSA § 281-A:8(I)(a), and are also immune from the third party tortfeasor's claim for contribution, <u>see</u> <u>Field</u>, 115 N.H. at 634-35, 348 A.2d at 718.

To prevent a covered employee who sues a third party from recovering twice, the employer or its carrier is entitled to a lien on the worker's recovery from the third party. See RSA § 281-A:13(I)(b).[5] The lien reimburses the employer or the

---

[5] RSA § 281-A:13(I) provides, in pertinent part:

(I)  (a) An injured employee, in addition to the benefits of this chapter, may obtain damages or benefits from or proceed at law or otherwise against another person to recover damages or benefits . . .

(b) The employer, or the employer's insurance carrier, shall have a lien on the amount of damages or benefits

17

carrier for its compensation outlay, less certain costs.  See id.

Janci's claim for worker's compensation payments in this case is barred because the statutory lien already provides it with the relief requested.  See RSA § 281-A:13(I)(b).  The statutory lien is Janci's sole remedy with respect to its claim for the compensation outlay.  Janci could otherwise recover twice for the same loss - once from Apkin directly, and once from its lien on Poitras's recovery from Apkin.  The legislature presumably did not intend such double-recovery.  Cf. Bilodeau, 116 N.H. at 87, 352 A.2d at 744 (purpose of employer's lien is based on "well-known principle of justice and equity," which is to prevent employee from recovering twice for same injury).

The prospect of double-recovery does not arise with respect to Janci's claim for increased premiums, since increased premiums are not included within the scope of the lien.  Whether such a claim may be pursued has not been addressed by the New Hampshire courts, but the course likely to be followed by those courts can

---

recovered by the employee, less the expenses and costs of action, to the extent of the compensation, medical, hospital, or other remedial care already paid or agreed or awarded to be paid by the employer, or the employer's insurance carrier, under this chapter, less the employer's or the employer's insurance carrier's pro rata share of expenses and costs of action . . . .

be anticipated.

"[A] plaintiff may not ordinarily recover in a negligence claim for purely 'economic loss.'" See Border Brook Terrace Condominium Ass'n v. Gladstone, 137 N.H. 11, 18, 622 A.2d 1248, 1253 (1993) (citation omitted). Claims in New Hampshire have been dismissed where a plaintiff has alleged only a loss in the value of its property, but not any personal injury or damage to property in which it held a proprietary interest. See, e.g., Ellis v. Robert C. Morris, Inc., 128 N.H. 358, 363, 513 A.2d 951, 953-54 (1986), overruled on other grounds by Lempke v. Dagenais, 130 N.H. 782, 784, 547 A.2d 290, 291 (1988).

Apkin argues that a claim for increased premiums is untenable because Janci has alleged purely economic losses. Construed in a light most favorable to Janci, see Rivera-Gomez, 843 F.2d at 635, the allegations are as follows: Apkin failed to warn Janci of a risk, and because of Apkin's failure to warn, Poitras was injured and Janci lost Poitras as an employee. The injury resulted in an increase in Janci's insurance premiums.

The allegations regarding Poitras's injury does not make Janci's claim one for personal injury. See RK Constructors, Inc. v. Fusco Corp., 650 A.2d 153, 157 (Conn. 1994) ("alleged damages to the [employer] that resulted from physical injury to its employee are purely economic in nature"). Although Poitras was

19

Janci's employee, he is a third party. The corporation itself did not suffer the injury. Cf. Clipper Affiliates, Inc. v. Checovich, 138 N.H. 271, 275, 638 A.2d 791, 794 (1994) (no evidence that tort harmed "corporate plaintiff, as opposed to [corporate president] individually"); Champion Well Serv., Inc. v. NL Indus., 769 P.2d 382, 385 (Wyo. 1989) (corporation did not have claim for tortious injury to its employee).

Furthermore, Janci's allegation that it lost the services of Poitras does not make its claim cognizable. The measure of damages for a master's claim for tortious injury to its servant, under the common law, is the value of the lost services. See Standard Oil Co. v. United States, 153 F.2d 958, 964 n.5 (9th Cir. 1946), aff'd on other grounds, 332 U.S. 301 (1947); Interstate Tel. & Tel. Co. v. Public Serv. Elec. Co., 90 A. 1062, 1063 (N.J. 1914); see also Joel E. Smith, Annotation, Employer's Right of Action for Loss of Services or the Like against Third Person Tortiously Killing or Injuring Employee, 4 A.L.R.4th 504 (1981) (recovery is measured by loss of employee's services). Increased worker's compensation premiums are not included within such damages. See W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 129, at 998 (5th ed. 1984) (courts have denied recovery for damages other than employee's services themselves, such as increased worker's compensation insurance premiums).

20

A number of courts in other jurisdictions have refused to permit recovery for increased premiums because such damages are too remote and barred by public policy, or because the applicable statute provides the employer with an exclusive remedy. See, e.g., RK Constructors, 650 A.2d at 157 (in absence of controlling statute or overriding public policy consideration, too remote as matter of Connecticut law); Northern States Contracting Co. v. Oakes, 253 N.W. 371, 372 (Minn. 1934) (too remote); Schipke v. Grad, 562 N.W.2d 109, 112-13 (S.D. 1997) (worker's compensation law provides exclusive remedy); Vogel v. Liberty Mut. Ins. Co., 571 N.W.2d 704, 708 (Wis. 1997) (barred by "public policy and common sense"); see also Erie Castings Co. v. Grinding Supply, Inc., 736 F.2d 99, 104-05 (3d Cir. 1984) (Pennsylvania worker's compensation law provides exclusive remedy); see generally Arthur Larson, 7 Larson's Worker's Compensation Law § 77.31 (1998 & Supp.) (citing cases). Such decisions provide guidance on the course that the New Hampshire courts are likely to follow. Accordingly, Janci's claim for increased insurance premiums cannot survive the motion to dismiss. The court holds that Janci's claim for increased worker's compensation payments would not be recognized by New Hampshire courts and grants Apkin's Rule 12 motion on that claim.

Janci's remaining counterclaim is for a set off of the

21

amount of worker's compensation it has paid against any adverse monetary judgment it might suffer on the indemnity claims. Janci failed to identify any statutory provision or other authority that expressly provides a cause of action for its set off claim, and the court can find none. See Bilodeau, 116 N.H. at 87, 352 A.2d at 744 ("the extent and manner by which a compensation payor can be reimbursed is governed by the express statutory language [of the worker's compensation law] and that which can be fairly implied therefrom"). In any case, because all of the indemnity claims have been dismissed, Janci's claim for a set off is moot. Therefore, Apkin's motion as to that counterclaim is granted.

## Conclusion

For the reasons stated above, Apkin's motion for summary judgment on Poitras's claims (document no. 12) is granted in part and denied in part. Summary judgment is granted on the obvious nature of the risk and on the negligent failure to warn claim in count II, while it is denied on the question of whether the bailment was gratuitous. Poitras's only remaining claims are the claims in count II which allege that Apkin was negligent in failing to ensure that the cable stripping machine was safe and in failing to install point-of-operation guards.

Janci's motion for summary judgment on Apkin's third party

22

claims (document no. 24) is granted.  Apkin's motion to dismiss Janci's counterclaims (document no. 21) is granted.  Apkin's motion for partial summary judgment on Janci's counterclaims (document no. 22) is granted.  This ends Janci's role in this case, both as a third party defendant and as a third party counterclaim plaintiff.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
District Judge

August  28, 1998

cc:  Joseph F. Daschbach, Esquire
     Thomas B.S. Quarles Jr., Esquire
     R. Peter Decato, Esquire
     Thomas W. Kelliher, Esquire10